**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **KHALID AUSTIN MAHAMMEND** | * |
| **Plaintiff** | * |
| v | *                    **Civil Action No. GJH-21-2339** |
| **GAIL WATTS,** *et al*. | * |
| **Defendants** | * |
| | *** |

**<u>MEMORANDUM OPINION</u>**

Pending in this civil rights case is Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 22. Plaintiff opposes the motion. ECF No. 24. No hearing is required to address the matters pending. *See* Local Rule 105.6 (D. Md. 2021). For the reasons stated below, Defendants' motion shall be denied without prejudice.

**I.    Complaint Allegations**

In his amended complaint, Plaintiff asserts that the named Defendants were all informed that Plaintiff's safety was threatened by other inmates due to a rumor spread throughout the Baltimore County Detention Center ("BCDC") that Plaintiff is a "snitch." ECF No. 4 at 3. Plaintiff states that on September 23, 2019, he was assaulted by his cellmate, Isaac Quamari, who hit Plaintiff in the face and eye while he was asleep. *Id*. Plaintiff's cellmate threatened that if he did not get out of the cell, Quamari would kill him. *Id*. Plaintiff told Sgt. Amaefule what Quamari had said, explained the reason why he was assaulted, and asked to be placed in protective custody. *Id*. Additionally, Plaintiff indicated he wished to press criminal charges against Quamari, but both his request for protective custody and for assistance in pressing criminal charges were denied. *Id*. Instead, Plaintiff was "illegally put on lock up." *Id*.

Plaintiff was moved into "3E Lock-up," where he remained for the next 30 days. ECF No. 4 at 3. While he was confined to lock-up, Plaintiff claims he notified Sgt. Figuero, Loveless, Salberry, Sgt. K. Pibulsiri, F. Dupree, L. Dais, P. Ejoh, K. Mason, D. Copper, and McDowell that he feared for his life and wanted to be moved to protective custody. *Id.* He was "given a 200 inmate complaint form to address [his] complaint to [the] Administration" including Major Alford, Gail Watts and Verch. *Id.* Plaintiff filled out the form and again explained that his co-defendant had told everyone that Plaintiff is "a rat-snitch." *Id.* Plaintiff received no reply to his complaint form and, when his lock-up time had ended, he was denied an assignment to protective custody. *Id*.

Plaintiff was placed back into general population on "3C Housing Unit cell #2." ECF No. 4 at 3. He explains that BCDC Housing Unit Rule #7 states that inmates are prohibited from entering another inmate's cell and if a staff member observes an inmate in a cell other than their own, they will face disciplinary action. *Id.* at 4. Additionally, Rule #6 requires inmates to keep their cell door closed unless they are entering or exiting their cells. *Id.* On January 20, 2021, Plaintiff claims that Officer Talley "went against the Rules in the Inmate Handbook." *Id.* at 3. Four inmates came into Plaintiff's locked cell and stabbed him because Officer Talley opened Plaintiff's cell door and allowed them into his cell. *Id.* at 4. Plaintiff states that the intruders beat him, and stabbed him in the stomach and left shoulder. *Id.* Plaintiff suffered "permanent marks/scars," two black eyes, and a "split" to his left eyelid. *Id.* Plaintiff adds that he still suffers from blurred vision as a result of this assault. *Id.*

Plaintiff was interviewed by Sgt. Carter and Lt. Johnson on the day of the assault. ECF No. 4 at 4. Plaintiff could not see the computer well enough to identify his assailants so Carter and Johnson reviewed the video surveillance footage to "see who all ran out of [his] cell to hide

knives and escape lock-up." *Id*. Plaintiff's assailants were then placed in lock-up. *Id*. Although Plaintiff states that he provided a copy of the incident report prepared after the January 20, 2021 assault, the incident reports attached to his original complaint concern incidents occurring on September 23, 2019, November 8, 2019, February 2, 2021, and June 27, 2021. ECF No. 1-2.

Following the assault on January 20, 2021, Plaintiff was "placed on 4s mental health tier" where he claims he was denied treatment for his stab wounds. ECF No. 4 at 4. After being there for two weeks, Plaintiff states that Sgt. Wilerton came to escort him to a cell located on 4H tier where Plaintiff had been assaulted several times. *Id*. at 5. Plaintiff told Sgt. Wilerton that he did not want to be housed on the 4H tier because he did not feel safe and "did not want to keep fighting being on lock-up." *Id*. Plaintiff states that Wilerton advised that he had to go on 4H or he would be put on lock-up. *Id*. Plaintiff accepted the housing assignment on 4H. *Id*.

Within one hour of moving onto the 4H housing unit, Plaintiff was assaulted by two inmates. ECF No. 4 at 5. Plaintiff states he was assaulted by these inmates because he refused to "come in their cell off camera." *Id*. Plaintiff was then placed on protective custody where he was in a cell alone. *Id*. However, Sgt. Bond placed "inmate Mason" in Plaintiff's cell. *Id*. Mason had been on lock-up and Plaintiff notified Bond that he did not feel safe with Mason being assigned as his cellmate. *Id*. According to Plaintiff, Bond told him "I'm not for this shit. Mason comes in or you come out an[d] go to lock up for refusing a bunk buddy." *Id*. Mason was placed in Plaintiff's cell and two days later, Mason assaulted Plaintiff by hitting him in the eye. *Id*. Plaintiff was moved to another protective custody unit after serving 20 days on lock up and being assigned to

suicide watch.  *Id*.  Plaintiff seeks monetary damages and release[1] from BCDC as relief.  ECF No. 4 at 7.

## B.      Defendants' Motion

Defendants assert that Plaintiff is not entitled to release from BCDC because he is no longer incarcerated there.  ECF No. 22-1 at 5-6.  Additionally, Defendants assert the affirmative defense that Plaintiff has not exhausted administrative remedies; they took reasonable measures to respond to and mitigate the risk to Plaintiff's safety; and they are entitled to qualified immunity.  *Id*. at 6-8.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

The purpose of Rule 12(b)(6) "'is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," *E.I. du Pont*

---

[1]      Defendants' assertion that Plaintiff is not entitled to release from BCDC because he is no longer there is well taken.  However, his request for monetary damages is not moot; therefore, the amended complaint may not be dismissed on this basis.

*de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and "draw all reasonable inferences in favor of the plaintiff," *id.* (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendants' Motion is styled as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). Because Defendants have not submitted materials outside of the pleadings to support their Motion, the Court construes it as a motion to dismiss.

Additionally, where, as here, the plaintiff is proceeding *pro se*, the Court reads the pleadings generously. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (finding a *pro se* complaint should be "liberally construed" and that, "'however inartfully pleaded,'" the complaint "must be held to 'less stringent standards than formal pleadings drafted by lawyers'" (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). At the same time, the Court must also fulfill its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

**Analysis**

**A.      Exhaustion of Administrative Remedies**

Defendants premise their claim that Plaintiff did not exhaust administrative remedies on the original complaint which indicates that Plaintiff did not file a grievance as required by the prison's administrative remedy procedure.  ECF No. 22-1 at 6, citing ECF No. 1 at 2.  In his Opposition Response Plaintiff states that his Amended Complaint asserts that he filed a "200 Inmate Complaint form" but received no response.  ECF No. 24.

If Plaintiff's claim has not been properly presented through the administrative remedy procedure it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e.  The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004)

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies.  *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50

F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds). In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *See Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015); *see also Blackburn v. S. Carolina*, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009) *aff'd*, 404 F. App'x 810 (4th Cir. 2010); *Kaufman v. Baynard*, CIV.A. 1:10-0071, 2012 WL 844480 (S.D.W. Va. Feb. 3, 2012) *report and recommendation adopted*, CIV.A. 1:10-0071, 2012 WL 844408 (S.D.W. Va. Mar. 12, 2012); *Miller v. McConneha, et al*, JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. November 11, 2015). State statute of limitations applicable to the filing of § 1983

complaints are subject to equitable tolling during the period of time a prisoner is exhausting administrative remedies.  *Battle v. Ledford*, 912 F.3d 708, 719–20 (4th Cir. 2019).

While Defendants summarily state that Plaintiff has admitted he did not exhaust administrative remedies in his original complaint, they do not address the claim in Plaintiff's amended complaint that he filed an administrative grievance concerning his need for protective custody.  "[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect."  *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co*., 226 F.3d 160, 162 (2d Cir. 2000), citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1476 (2d ed. 1990) ("A pleading that has been amended . . . supersedes the pleading it modifies . . .")).  The allegation that there is no dispute of fact regarding whether Plaintiff exhausted administrative remedies is therefore incorrect.

Defendants have not explained to this Court what steps are involved in exhausting administrative remedies at BCDC, making it impossible to discern whether Plaintiff's filing of a "200 Inmate Complaint form" is enough to satisfy procedural requirements for exhaustion. Without that information, the affirmative defense fails.

## B.    Fourteenth Amendment Claim

Defendants assert that Plaintiff has not plead facts sufficient to sustain a deliberate indifference claim because his complaint "does not state any facts that he identified any specific threats made to his person."  ECF No. 22-1 at 7.  Defendants again rely on the text found in the original complaint rather than the amended complaint.  Their conclusory claim that Plaintiff has not plead sufficient facts to support a Fourteenth Amendment claim fails because it is dependent upon the incorrect pleading and the amended complaint alleges repeatedly that Plaintiff told

correctional staff his life was in danger on numerous occasions.  ECF No. 4.  The facts Plaintiff relies upon are sufficient, if proven, to state a claim of deliberate indifference to his need for protection from violence.

## C.    Qualified Immunity

Defendants' qualified immunity defense also fails.  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "In particular, . . . qualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'"  *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).  The defense provides protection for public officials for mistakes of law, mistakes of fact, or a combination of the two.  *See Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting).  Qualified immunity is a defense from suit, not simply liability, which is lost if a matter is improperly permitted to go to trial.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

In order to determine if a public official is entitled to the protections afforded by qualified immunity, two inquiries must be addressed by this Court.  The first prong is whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201.  If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue.  *Id*.  If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability.  The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for

summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007) (citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful. *Dist. of Columbia v. Wesby*, _ U.S. _, 138 S. Ct. 577, 589 (2018) citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The Supreme Court issued its decision in *Famer v. Brennan*, 511 U.S. 825 (1994) twenty-eight years ago. The Court observed that:

> Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Id*. 511 U.S. at 833-34. When read in a light most favorable to Plaintiff, the allegations in the amended complaint state a colorable claim. He alleges that he told each of the named Defendants that his life was in danger and, despite his warnings, no actions were taken to protect him from assaults by other inmates. A qualified immunity defense does not apply in this case.

### Conclusion

For the above-stated reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment shall be denied without prejudice. Further litigation in this matter will be governed by the deadlines set-forth in the separate Order which follows.

May 12, 2022                              _____/s/_____

Date                                                      GEORGE J. HAZEL
                                                            United States District Judge